UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 19-20173

Hon. George Caram Steeh

D-1 GANDAM JAYAKAR and
D-2 SANJIT JAMES JAYAKAR,

    Defendants.
_____/

OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO SUPPRESS (ECF No. 43)

Defendants seek to suppress statements they made to federal agents. Following oral argument, the court took the matter under advisement. Because the salient facts are not in dispute, the court finds that an evidentiary hearing is not necessary to resolve Defendants' motion.

BACKGROUND FACTS

Defendant Gandam Jayakar is an 84-year-old medical doctor; Defendant Sanjit James Jayakar (age 54) is his son and is not a medical professional. Sanjit was the primary owner and operator of Pain Stop MD, a clinic at which Gandam was a physician. Defendants are charged with nine counts of health care fraud and conspiracy to commit health care fraud. The indictment alleges that Defendants fraudulently billed Medicare

for spinal facet joint injections.  The injections were performed by Sanjit, but billed as if performed by Gandam.

On Tuesday, March 12, 2019, at about 7:25 a.m., agents Abhijit Dixit and Peter Hayes (from the FBI and Department of Heath and Human Services) arrived at Defendants' home in Grosse Pointe.[1]  Gandam and Sanjit live with Soroja Jayakar, age 79, who is Gandam's wife and Sanjit's mother.  Like Gandam, Soroja is a medical doctor.  Soroja opened the door and invited the agents in.  The agents indicated that they wanted to speak to Gandam and apologized for bothering them.  They told Soroja that they would go "wherever you'd like us" and Soroja directed them to sit.

When Gandam entered the room, one of the agents said, "Good morning, sir, how are you today?"  Gandam replied, "I don't know, I'm getting scared."  The government suggests that this may have been an attempt at humor, because his wife laughed.  The agents said "oh, don't be scared" and introduced themselves.  The agents interviewed Gandam, with Soroja present and occasionally chiming in, for approximately ninety minutes.  The tenor of the agent's questioning was calm and non-accusatory.  After about an hour, their son Sanjit entered the room and

---

[1] A recording of the interview has been filed with the court.  ECF No. 49.

joined the conversation. The agents asked, "are we holding you up?" but Gandam said no.

When the interview ended, the agents left. A different team of agents then arrested Gandam and Sanjit on a criminal complaint. The government subsequently sought an indictment, which was returned March 28, 2019.

## LAW AND ANALYSIS

Defendants seek to suppress the statements they made to the agents during the March 12 interview at their home. Defendants argue that the "predawn" arrival of the agents transformed the intended "knock and talk" into an unlawful warrantless search.

The Fourth Amendment protects individuals against unreasonable searches and seizures. "When the Government obtains information by physically intruding on persons, houses, papers, or effects, a 'search' within the original meaning of the Fourth Amendment has undoubtedly occurred." *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (internal quotation marks and citations omitted). A physical intrusion into a home by police is permissible "only where justified by a warrant, exigent circumstances, or valid consent." *Smith v. City of Wyoming*, 821 F.3d 697, 709 (6th Cir. 2016).

"Knocking on the front door of a home in order to speak with the occupant – a so-called 'knock and talk' – is generally permissible" as long

as the police have consent. *Smith,* 821 F.3d at 713. An occupant is not obligated to open the door, answer questions, or allow police to enter. *Id.* "When an officer coerces a person to answer his questions, or forces his way into a private home, he exceeds the scope of a consensual 'knock and talk' and thus intrudes on Fourth Amendment Rights." *Id.*

In support of their claim that the "knock and talk" violated the Fourth Amendment, Defendants rely upon *Florida v. Jardines*, 569 U.S. 1 (2013) and *People v. Fredrick*, 500 Mich. 228 (2017). In *Jardines*, the Supreme Court considered whether using a drug-sniffing dog on a homeowner's porch in order to investigate the contents of the home was a "search" within the meaning of the Fourth Amendment. A police officer with a drug-sniffing dog climbed onto a suspect's porch and the dog signaled the presence of narcotics at the front door. The police officer then left and sought a search warrant for the home. The Court found that the porch, as part of the curtilage of the home, was a "constitutionally protected area." *Jardines*, 569 U.S. at 7. The Court then considered whether the officer's investigation constituted an "unlicensed physical intrusion." In doing so, the Court explained that the public has an implied license to approach a front door:

> "[T]he knocker on the front door is treated as an invitation
> or license to attempt an entry, justifying ingress to the

> home by solicitors, hawkers and peddlers of all kinds." This
> implicit license typically permits the visitor to approach the
> home by the front path, knock promptly, wait briefly to be
> received, and then (absent invitation to linger longer)
> leave. Complying with the terms of that traditional invitation
> does not require fine-grained legal knowledge; it is
> generally managed without incident by the Nation's Girl
> Scouts and trick-or-treaters. Thus, a police officer not
> armed with a warrant may approach a home and knock,
> precisely because that is "no more than any private citizen
> might do."

*Jardines*, 569 U.S. at 8 (citations omitted). The Court then distinguished the police conduct in the case before it from the typical "knock and talk," because "introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do *that*." *Id.* at 9 (emphasis in original).

In *Frederick*, the Michigan Supreme Court held that police approaching a residence for a "knock and talk" at 4 or 5:30 a.m. exceeded any implied license to do so. Relying on dicta in *Jardines,* the court explained that "the scope of the implied license to approach a house and knock is time-sensitive. Just as there is no implied license to bring a drug sniffing dog to someone's front porch, there is generally no implied license to knock at someone's door in the middle of the night." *Frederick*, 500 Mich. at 238; *see also United States v. Lundin*, 817 F.3d 1151, 1159 (9th

Cir. 2016) ("[U]nexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours.").

The instant case is distinguishable from *Frederick*, which is also not binding authority. The agents knocked on Defendants' door at 7:25 a.m., which is not the "middle of the night." Although Defendants characterize the time as "predawn" (sunrise on that day was at 7:49 a.m.), it is generally a time when working adults are awake and preparing for the day. In this regard, the court is also guided by Federal Rule of Criminal Procedure 41, which defines "daytime" as "between 6 a.m. and 10:00 p.m." *See* Fed. R. Crim. P. 41(a)(2)(B), (e)(2)(A) (arrest and search warrants generally are to be executed during the "daytime"). The agents did not arrive at an unreasonable hour, such that they exceeded the scope of their implied license to approach Defendants' door for a "knock and talk." *Cf. Lundin*, 817 F.3d at 1159 (officers' 4 a.m. visit to home not within implied license to knock and talk); *Frederick*, 500 Mich. at 239 n.6 (declining to decide "precisely what time the implied license to approach begins and ends" because 4 a.m. and 5:30 a.m. visits were clearly outside the scope of the implied license).

Neither *Jardines* nor *Frederick* compel the conclusion that the officers were trespassing when they approached Defendants' door at 7:25 a.m. and

that the "knock and talk" was therefore transformed into a warrantless search. The parties do not dispute that the officers approached Defendants' front door, knocked, waited briefly to be admitted, and were invited in, which is consistent with the implied license described by the Supreme Court in *Jardines*. *See Jardines*, 569 U.S. at 9 n.4 ("[I]t is not a Fourth Amendment search to approach the home in order to speak with the occupant."). Defendants do not allege that the interview was otherwise unlawful.[2] In light of the totality of the circumstances, the officers' "knock and talk" was not an unreasonable search or seizure. Accordingly, the court will deny Defendants' motion to suppress.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion to suppress (ECF No. 43) is DENIED.

Dated: November 25, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 25, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

[2] For example, Defendants do not argue that the agents' questioning of them was coercive or that the interview was a custodial interrogation that would require a *Miranda* warning. *See, e.g., United States v. Panak*, 552 F.3d 462 (6th Cir. 2009).